1  Jonathan Gross, State Bar No. 122010
2  jgross@moundcotton.com
   Kathleen DeLaney, State Bar No. 196376
3  kdelaney@moundcotton.com
4  MOUND COTTON WOLLAN & GREENGRASS LLP
   2200 Powell Street, Suite 1050
5  Emeryville, California 94608
   Telephone: (510) 900-9371
6  Facsimile:  (510) 900-9381
7
8  Attorneys for CHUBB NATIONAL
   INSURANCE COMPANY
9

10           IN THE UNITED STATES DISTRICT COURT

11       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

12  ALWAYS SMILING PRODUCTIONS,        Case No. 2:21-cv-05990
13  LLC, a California limited liability
    corporation,                        **DEFENDANT'S NOTICE OF**
14                                       **MOTION AND MOTION FOR**
15        Plaintiff,                     **JUDGMENT ON THE PLEADINGS**
                                         **PURSUANT TO FEDERAL RULES**
16  v.                                   **OF CIVIL PROCEDURE, RULE 12(c),**
17                                       **AND MEMORANDUM OF POINTS**
    CHUBB NATIONAL INSURANCE            **AND AUTHORITIES IN SUPPORT**
18  COMPANY, an Indiana corporation     **THEREOF**
19                                       FRCP 12(c)
20        Defendant.
21                                       Date:   November 18, 2021
22                                       Time:   10:00 a.m.
                                         Judge:  Fernando M. Olguin
23

24                   **NOTICE OF MOTION**

25       **TO PLAINTIFF AND ITS ATTORNEYS OR RECORD:**

26       **PLEASE TAKE NOTICE** that on November 18, 2021 at 10:00 a.m., or as

27  soon thereafter as this matter may be heard, in the United States District Court,

28  Central District, before the Hon. Fernando M. Olugin, United States Courthouse, Los

*(left margin, vertical)* MOUND COTTON WOLLAN & GREENGRASS LLP  2200 POWELL STREET  SUITE 1050  EMERYVILLE, CALIFORNIA 94608  TELEPHONE: (510) 900-9371  FACSIMILE: (510) 900-9381

1

Angeles, California, Defendant Chubb National Insurance Company ("Chubb") will and hereby does move the Court, pursuant to Fed. R. Civ. P 12(c) for judgment on Plaintiff's Complaint, based upon the following:

1.      Accepting all allegations in the Complaint as true, Plaintiff has failed to state any cognizable legal claim against Defendant.

2.      Plaintiff is not entitled to Cast coverage as no "declared person" was unable to "commence, continue or complete their duties or performances in an insured production" as a result of "death, injury, sickness, kidnap, or compulsion by physical force or threat of physical force."

3.      Plaintiff is not entitled to Ingress/Egress coverage because there has been no prevention of access to a filming location due to "direct physical loss or damage to property."

4.      Plaintiff is not entitled to Imminent Peril coverage because there has been no "imminent direct physical loss or damage caused by or resulting from a peril not otherwise excluded."

5.      Plaintiff is not entitled to coverage under the Due Diligence condition inasmuch as that provision is a condition precedent to coverage and, in and of itself, is not a grant of coverage.

6.      Plaintiff is not entitled to coverage under the "Protection of Property" condition inasmuch as any costs Plaintiff incurred for COVID safety were incurred to prevent a potential future loss rather than taking steps to avoid or minimize any loss or damage that already had occurred.

7.      Plaintiff is not entitled to Civil Authority coverage for COVID-19 safety protocols inasmuch as they are not "caused by the action of a civil or military authority… that: revokes your permission to use; or prohibits access to, property or facilities which are to be used in an insured production."

8.      Plaintiff is not entitled to recover for breach of contract for Defendant's decision not to renew coverage past the expiration date of the Policy.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

9.     Because there is no coverage under the Policy, there can be no breach of the covenant of good faith and fair dealing.

This motion is made following a pre-filing conference of counsel, pursuant to United States District Court, Central District, Local Rule 7-3, which occurred by a telephone conference on September 22, 2021.

This motion will be based upon this notice of motion and the accompanying memorandum of points and authorities in support thereof, the pleadings, and records on file with this Court, any evidence of which this Court may take judicial notice, and any and all documentary or oral evidence that may be presented at the hearing of this motion.

Dated: October 21, 2021                    MOUND COTTON WOLLAN &
                                            GREENGRASS LLP


                                            By:  /s/Kathleen DeLaney
                                                Jonathan Gross
                                                Kathleen DeLaney
                                                Attorneys for Chubb National Insurance
                                                Company

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371  FACSIMILE: (510) 900-9381

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ....................................................................... 2

III.  LEGAL STANDARDS ............................................................................. 4

      A.    Motion for Judgment on the Pleadings .................................... 4

      B.    Interpreting a Policy ................................................................. 5

IV.   ARGUMENT ............................................................................................ 6

      A.    The First Cause Of Action For Breach Of Contract Should Be
            Dismissed Because Chubb Has Paid All Covered Claims. ............... 6

            1.    Cast Coverage is Not Available for Plaintiff's Claims. ............ 6

            2.    Ingress/Egress Coverage is Not Available ............................... 7

            3.    Imminent Peril Coverage is Not Available ............................. 10

            4.    Plaintiff is Not Entitled to Civil or Military Authority
                  Coverage for COVID Safety Protocol Costs. ......................... 11

            5.    The "Due Diligence" Condition is Not a Coverage Grant. ...... 13

            6.    The "Protection of Property" Condition Does Not Provide
                  Coverage for Costs to Prevent a Potential Future Loss. .......... 13

      C.    The Second Cause Of Action For Breach Of Contract Should Be
            Dismissed Because Chubb Is Not Required To Renew The Policy
            Upon Expiration. .......................................................................... 14

      D.    The Third Cause Of Action For Breach Of The Implied Covenant
            Of Good Faith And Fair Dealing Should Be Dismissed .................... 15

IV.   CONCLUSION ....................................................................................... 16

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET   SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*10E, LLC v. Travelers Indem. Co. of Conn.*
    483 F.Supp.3d 828 (C.D. Cal. 2020)...................................................................18

4

*BA LAX, LLC v. Hartford Fire Ins. Co.*
    No. 2:20-cv-06344-SVW-JPR, 2021 WL 144248 (C.D. Cal. Jan. 12,
    2021) .........................................................................................................9, 10, 12

5

6

*Balistreri v. Pacifica Police Dept.*
    901 F.2d 696 (9th Cir. 1988) ...............................................................................5

7

*Barbizon School of San Francisco, Inc. v. Sentinel Ins. Co. Ltd.*
    No. 20-cv-08578-TSH, 2021 WL 1222161 (N.D. Cal. Mar. 31,
    2021) ...............................................................................................................11, 12

8

9

*Brown v. Mid-Century Ins. Co.*
    215 Cal.App.4th 841 (2013) ..............................................................................18

10

11

*Cafasso, U.S. ex rel. v. General Dynamics c4 Systems, Inc.*
    637 F.3d 1047 (9th Cir. 2011) .............................................................................4

12

*Chavez v. U.S.*
    683 F.3d 1102 (9th Cir. 2012) .............................................................................5

13

14

*Cont'l Cas. Co. v. Phoenix Constr. Co.*
    46 Cal.2d 423 (1956) ............................................................................................6

15

*Corder v. Lewis Palmer School Dist.*
    No. 38, 566 F.3d 1219 (10th Cir. 2009) ..............................................................5

16

17

*Crusader Ins. Co. v. Burlington Ins. Co.*
    No. CV 19-537, 2020 WL 4919387 (C.D. Cal. June 12, 2020) .........................6

18

19

*Erickson v. Boston Scientific Corp.*
    846 F.Supp.2d 1085 (C.D. Cal. 2011) .................................................................4

20

*Hartford Acc. & Indem. Co. v. Sequoia Ins. Co.*
    211 Cal.App.3d 1285 (1989) ................................................................................6

21

*Island Rests., LP v. Affiliated FM Ins. Co.*
    No. 3:20-CV-02013, 2021 WL 1238872 (S.D. Cal. Apr. 2, 2021) .....................8

22

23

*Johnson v. Rowley*
    569 F.3d 40 (2nd Cir. 2009) ................................................................................5

24

*Jonathan Oheb MD, Inc. v. Travelers Cas. Ins. Co. of Am.*
    No. 2:20-cv-8478-JWH, 2020 WL 7769880 (C.D. Cal. Dec. 30,
    2020) ....................................................................................................................10

25

26

*Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*
    513 F.Supp.3d 1163 (N.D. Cal. 2021) ..........................................................10, 11

27

28

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

*L.A. Cnty. Museum of Nat. History Found. v. Travelers Indem. Co.*
    No. CV-01497, 2021 WL 1851028 (C.D. Cal. Apr. 15, 2021) ...........................8

*Minich v. Allstate Ins. Co.*
    193 Cal.App.4th 477 (2011) ...........................18

*ML Direct, Inc. v. TIG Spec. Ins. Co.*
    79 Cal.App.4th 137 (2000) ...........................6

*Montrose Chem. Corp. v. Admiral Ins. Co.*
    10 Cal.4th 645 (1995) ...........................7

*Mortar & Pestle Corp. v. Attain Specialty Ins. Co.*
    508 F.Supp.3d 575 (N.D. Cal. 2020) ...........................9

*O'Keefe v. Allstate Indem. Co.*
    953 F.Supp.2d 1111 (S.D. Cal. 2013) ...........................18

*Out West Rest. Group, Inc. v. Affiliated FM Ins. Co.*
    No. 20-cv-06786-TSH, 2021 WL 1056627 (N.D. Cal. Mar. 19, 2021) ...........................11

*Palmer v. Truck Ins. Exch.*
    21 Cal.4th 1109 (1999) ...........................5, 6, 7

*Palomar Health v. Am. Guar. & Liab. Ins. Co.*
    2021 WL 4035005 (S.D. Cal. Sept. 3, 2021) ...........................9, 10

*Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*
    491 F.Supp.3d 738 (S.D. Cal. 2020) ...........................9

*Patel v. Contemporary Classics of Beverly Hills*
    259 F.3d 123 (2d Cir. 2001) ...........................4

*Plan Check Downtown III, LLC v. AmGuard Ins. Co.*
    485 F.Supp.3d 1225 (C.D. Cal. 2020) ...........................9

*Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*
    517 F.Supp.3d 981 (N.D. Cal. 2021) ...........................12

*Ray v. Valley Forge Ins. Co.*
    77 Cal.App.4th 1039 (1999) ...........................6

*Ross v. U.S. Bank Nat'l Ass'n*
    542 F.Supp.2d 1014 (N.D. Cal. 2008) ...........................4

*Sprewell v. Golden State Warriors*
    266 F.3d 979 (9th Cir. 2001) ...........................5

*Travelers Cas. Ins. Co. v. Geragos & Geragos*
    No. CV 20-3619, 2021 WL 1659844 (C.D. Cal. Apr. 27, 2021) ...........................8, 9

*TRB Invs, Inc. v. Fireman's Fund Ins. Co.*
    40 Cal.4th 19 (2006) ...........................5

iii

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

*Universal Cable Productions, LLC v. Atlantic Spec. Ins. Co.*
   929 F.3d 1143 (9th Cir. 2019) ........................................................13, 14

*Unmasked Management, Inc. v. Century-Nat. Ins. Co.*
   514 F.Supp.3d 1217 (S.D. Cal. 2021) ........................................6, 10

*Waller v. Truck Ins. Exch., Inc.*
   11 Cal.4th 1 (1995) ........................................................................18

*Wellness Eatery La Jolla LLC v. Hanover Ins. Group*
   517 F.Supp.3d 1096 (S.D. Cal. 2021) ....................................10, 11

*West Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*
   498 F.Supp.3d 1233 (C.D. Cal. 2020) ............................................11

## **Statutes**

Federal Rules of Civil Procedure 12(c) ................................................1, 4

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371  FACSIMILE: (510) 900-9381

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(c), Defendant Chubb National Insurance Company ("Chubb") respectfully submits this memorandum of points and authorities in support of its Motion for Judgment on the Pleadings.

Since the COVID-19 pandemic began, businesses have sought to recover under their insurance policies for their economic losses.  Nonetheless, policies such as the one issued by Chubb to Plaintiff do not cover every financial loss suffered by an insured. Rather, coverage is dictated by the terms and conditions of the particular policy under which an insured seeks coverage.  Here, Chubb determined that Plaintiff was entitled to coverage subject to the $1,000,000 per occurrence sublimit for Civil or Military Authority for the production loss sustained as a result of Governor Newsom's March 12, 2020 order.  (Complaint, ¶ 57.) That sum has been paid by Chubb to Plaintiff.  (*Id.* at ¶ 67.)

Plaintiff's remaining claims simply are not covered under the clear and unambiguous terms of the policy. Accordingly, the First Cause of Action should be dismissed with prejudice.  First, Plaintiff is not entitled to Cast coverage as no "declared person" was unable to "commence, continue or complete their duties or performances in an insured production" as a result of "death, injury, sickness, kidnap, or compulsion by physical force or threat of physical force." Second, Ingress/Egress coverage is not available because there has been no prevention of access to a filming location due to "direct physical loss or damage to property." Third, Plaintiff is not entitled to Imminent Peril coverage because there has been no "imminent direct physical loss or damage caused by or resulting from a peril not otherwise excluded."  Fourth, Civil or Military Authority coverage for COVID-19 safety protocols is not triggered inasmuch as the costs incurred are not "caused by the action of a civil or military authority… that: revokes your permission to use; or prohibits access to, property or facilities which are to be used in an insured

1

production." Moreover, Chubb already has paid its full $1 million per occurrence limit of liability for Civil or Military Authority coverage for the production shutdown in March 2020. Fifth, coverage is not available under the Due Diligence condition inasmuch as that provision is not a coverage grant, but rather a condition precedent to coverage. Sixth, coverage is not available under the Protection of Property provision inasmuch as the costs allegedly incurred for COVID safety protocols were incurred to prevent a potential future loss rather than to avoid or minimize any loss or damage that already had occurred.

Moreover, the Second Cause of Action, alleging breach of contract for failure to extend the policy period, also should be dismissed inasmuch as Chubb is not under any obligation to renew an expired policy or to offer terms and/or limits sought by an insured.

Finally, the Third Cause of Action for breach of the implied covenant of good faith and fair dealing also should be dismissed because where there is no coverage under the Policy, there can be no breach of the covenant of good faith and fair dealing.

## II.   STATEMENT OF FACTS

Chubb issued Film Producer's Risk Policy No. 77997-45-17 to Always Smiling Productions, LLC ("Always Smiling"), effective from November 7, 2019 to November 7, 2020 (the "Policy"). (Complaint, ¶ 29, and Ex. A thereto.) The Policy covered the production entitled *The Morning Show*, a television series on Apple TV+. (*Id.* at ¶¶ 9, 29.) The Policy provides $125,000,000 in Cast coverage and separate $1,000,000 per occurrence sublimits for Imminent Peril, Civil or Military Authority, and Ingress/Egress coverages. (*Id.* at ¶ 30.)

The Policy also contains a "Conditions" section, which includes, among other conditions, a "Due Diligence" clause that requires an insured to "use due diligence to avoid or diminish a loss or circumstance that may give rise to a loss or damage...." and a separate condition that the insured is to "[t]ake every reasonable step to protect

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET   SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

the property from further damage, and to avoid or minimize any loss or damage." (*Id.* at ¶¶ 31, 32.)

On or about March 12, 2020, Plaintiff notified Chubb that it was shutting down production of the second season of *The Morning Show* because of the COVID-19 pandemic and related California state and local "stay-at-home" orders. (*Id.* at ¶¶ 52, 53, 56.) After reviewing the claim and the Policy, Chubb advised on April 15, 2020 that coverage was available under the Policy's Civil or Military Authority coverage, which had a $1,000,000 per occurrence limit of liability. (*Id.* at ¶ 57.) Thereafter, on September 1, 2020, Plaintiff sought coverage under additional provisions of the Policy, including coverages for Cast, Imminent Peril, and Ingress/Egress, as well as under policy conditions for "Due Diligence" and "Insured's Duties in the Event of Loss or Damage." (*Id.* at ¶ 59.) Among the costs sought by Plaintiff were costs for COVID-19-related "safety protocols" (a.k.a. "Return-To-Work Costs"). (*Id.*) By letter dated September 30, 2020, Chubb advised that, aside from the $1,000,000 already paid under the Civil or Military Authority coverage provision on June 7, 2021, coverage was not available under the other coverage provisions or conditions contained in the September 1 letter. (*Id.* at ¶¶ 61, 67.) Additionally, Chubb informed Plaintiff that Return-To-Work Costs were not covered under the Policy inasmuch as the COVID-19 safety protocols did not involve a revocation of permission to use property or a prohibition of access to property used in an insured production. (*Id.*, at ¶ 62.)

The Policy expired on November 7, 2020. (*Id.* at ¶ 29.) On August 19, 2020, Chubb sent a non-renewal notice to Plaintiff, advising that it would not renew the Policy on the same terms upon its expiration. (*Id.* at ¶ 68.) Given the drastic change in circumstances surrounding the COVID-19 pandemic, Chubb offered to issue a renewal policy, albeit one with an exclusion for "communicable disease." (*Id.* at ¶ 71.)

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 2:21-CV-05990

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

## III. LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion brought pursuant to "Rule 12(c) is 'functionally identical' to [a motion brought pursuant to] Rule 12(b)(6)." *See Cafasso, U.S. ex rel. v. General Dynamics c4 Systems, Inc*., 637 F.3d 1047, 1054, n. 4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6)"). Therefore, when considering a Rule 12(c) motion, the Court should apply the same standards applicable to a Rule 12(b)(6) motion. *See Cafasso*, 637 F.3d at 1054, n. 4; *Erickson v. Boston Scientific Corp*.846 F.Supp.2d 1085, 1089 (C.D. Cal. 2011) (same); *Ross v. U.S. Bank Nat'l Ass'n*, 542 F.Supp.2d 1014, 1023 (N.D. Cal. 2008) (same). The only difference between a motion brought pursuant to Rule 12(c) and Rule 12(b)(6) is that a Rule 12(c) motion may be filed after a defendant files an answer. *See, e.g., Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (holding that a motion to dismiss for failure to state a claim that is styled as arising under Rule 12(b), but is filed after the close of pleadings, should be construed by the district court as a motion for judgment on the pleadings under Rule 12(c)).

In order to survive a Rule 12(c) motion, the complaint must contain sufficient factual allegations to state a claim that is "plausible on its face." *See Chavez v. U.S*., 683 F.3d 1102, 1108-1109 (9th Cir. 2012). *See also Johnson v. Rowley*, 569 F.3d 40, 43-44 (2nd Cir. 2009) (applying the *Iqbal/Twombly* standard to Rule 12(c) motion); *Corder v. Lewis Palmer School Dist.* No. 38, 566 F.3d 1219, 1223-1224 (10th Cir. 2009) (same). While a court must view the allegations in the light most favorable to the plaintiff, it need not accept conclusory allegations, unwarranted fact deductions, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "Dismissal is proper where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371 FACSIMILE: (510) 900-9381

claim." *Hinds Invs., L.P. v Angioli*, 654 F.3d 846, 850 (9th Cir. 2011); and *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.")

**B.     Interpreting a Policy**

Interpretation of an insurance policy is a question of law decided under general rules of contract interpretation.  *TRB Invs, Inc. v. Fireman's Fund Ins. Co.*, 40 Cal.4th 19, 27 (2006).  Like other forms of contractual interpretation, the language of a policy is interpreted in context and courts must read the policy "as a whole with each part being read in conjunction with other portions thereof." *Hartford Acc. & Indem. Co. v. Sequoia Ins. Co.*, 211 Cal.App.3d 1285, 1298 (1989); *ML Direct, Inc. v. TIG Spec. Ins. Co.*, 79 Cal.App.4th 137, 141 (2000).

An insurance policy should be enforced as written when its terms are clear. *Palmer v. Truck Ins. Exch.*, 21 Cal.4th 1109, 1115 (1999).  California courts should "not engage in forced construction of insuring clauses to find coverage" or "strain to create an ambiguity where not exists." *Ray v. Valley Forge Ins. Co.*, 77 Cal.App.4th 1039, 1044 (1999), as modified (Jan. 27, 2000).  Moreover, an insurer "has the right to limit the coverage of a policy issued by it and when it had done so, the plain language of the limitation must be respected."  *Cont'l Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 432 (1956); *see also Unmasked Management, Inc. v. Century-Nat. Ins. Co.*, 514 F.Supp.3d 1217, 1222 (S.D. Cal. 2021), *appeal filed* ("[a]n insurance company can choose which risks it will insure and which it will not, and coverage limitations set forth in a policy will be respected); *Crusader Ins. Co. v. Burlington Ins. Co.*, No. CV 19-537, 2020 WL 4919387, at * 6 (C.D. Cal. June 12, 2020) (same).  Accordingly, without a clear indication to the contrary, the "'clear and explicit' meaning of these provisions, interpreted in their 'ordinary and popular sense,' controls judicial interpretation." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal.4th 645, 666 (1995).

## IV.   ARGUMENT

### A.   The First Cause Of Action For Breach Of Contract Should Be Dismissed Because Chubb Has Paid All Covered Claims.

#### 1.   Cast Coverage is Not Available for Plaintiff's Claims.

The Cast coverage provision of the Policy provides that Chubb will "pay for the actual **production loss** you incur due to the inability of an **essential element** or other **declared person** to commence, continue or complete their duties or performances in an **insured production** as a result of a **covered cause of loss** of such **essential element** or other **declared person**…"  (Complaint, ¶ 33, and Ex. A thereto.)[1]   The term "covered cause of loss" is defined in the Cast coverage as "death, injury, sickness, kidnap, or compulsion by physical force or threat of physical force."  (*Id.* at ¶ 36.)  The term "Declared Person" is defined in the Policy as "any individual listed on the Cast Insurance Schedule." (Complaint, Ex. A, Cast Coverage.)

The Complaint is devoid of any allegations that any "declared person" in *The Morning Show* sustained a covered cause of loss, i.e., death, injury, sickness, kidnap, or compulsion by physical force or threat of physical force, let alone that there was any "actual production" loss because of a covered cause of loss.  Rather, Plaintiff simply alleges that it is entitled to Cast coverage because it took steps to "minimize, prevent, and mitigate losses otherwise insured under the Policy."  (Complaint, ¶ 64.) These allegations underscore the fact that no declared person sustained a covered cause of loss under the Cast coverage provision.  Accordingly, under the clear and unambiguous language of the Policy, Cast coverage is not triggered.  *Palmer*, 21 Cal.4th at 1115 (an insurance policy should be enforced as written when its terms are clear).

---

[1]  The Policy also has a separate $1,000,000 sublimit for Undeclared Person Cast Coverage, although the Complaint does not reference this provision.  Accordingly, it appears that Plaintiff is not seeking coverage under the Undeclared Cast provision,

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371  FACSIMILE: (510) 900-9381

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

### 2.   Ingress/Egress Coverage is Not Available

The Policy contains the following Ingress/Egress coverage grant under the "additional coverages" section of the Policy (Form 10-02-1735, page 4 of 24):

> We will pay for the actual **production loss** you incur due to the actual or potential impairment of an **insured production** when ingress to or egress from a **location** is prevented due to direct physical loss or damage to property at a premises contiguous to such **location** caused by or resulting from a peril not otherwise excluded, not to exceed the applicable Limit of Insurance for Ingress And Egress shown under Production Loss in the Declarations.

(Complaint, ¶ 40, and Ex. A.)  The term "location" is defined as "shooting locations, locations used for developing of negatives and editing of the **insured production**; and locations used for storage of property to be used in the **insured production**." (*Id.* at ¶ 41.)

In order to trigger coverage under the Ingress/Egress provision, there must be a prevention of access to the location "due to direct physical loss or damage to property at a premises contiguous to" the "location."  Federal courts in California reviewing COVID-19 property coverage claims make clear that the meaning of "direct physical loss or damage to property" is "well established….Property must undergo a 'distinct, demonstrable, physical alteration.'" *L.A. Cnty. Museum of Nat. History Found. v. Travelers Indem. Co.*, No. CV-01497, 2021 WL 1851028, at *3 (C.D. Cal. Apr. 15, 2021); *Island Rests., LP v. Affiliated FM Ins. Co.*, No. 3:20-CV-02013, 2021 WL 1238872, at *4 (S.D. Cal. Apr. 2, 2021) (same); *BA LAX, LLC v. Hartford Fire Ins. Co.*, No. 2:20-cv-06344-SVW-JPR, 2021 WL 144248, at *3 (C.D. Cal. Jan. 12, 2021), *appeal filed* (same and noting that "[d]etrimental economic impact" does not suffice to demonstrate "direct physical loss or damage" to property).   "The weight of California law…appears to require some tangible alteration, no matter whether the trigger language uses 'loss' or 'damage.'" *Plan Check Downtown III, LLC v. AmGuard Ins. Co.*, 485 F.Supp.3d 1225, 1230 (C.D.

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

1  Cal. 2020).

2      California courts have held that neither "stay-at-home" orders nor a temporary

3  loss of use of property constitute "direct physical loss or damage" to property.

4  *Mortar & Pestle Corp. v. Attain Specialty Ins. Co*., 508 F.Supp.3d 575, 579-81 (N.D.

5  Cal. 2020) (citing "wave" of cases ruling that government orders entered to stop

6  spread of COVID-19 are not "physical loss of or damage to" property); *Pappy's*

7  *Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F.Supp.3d 738, 740 (S.D. Cal. 2020);

8  *Palomar Health v. Am. Guar. & Liab. Ins. Co.*, 2021 WL 4035005, at *8 (S.D. Cal.

9  Sept. 3, 2021) (temporary loss of the ordinary use of property does not constitute

10  "physical loss or damage"); *Travelers Cas. Ins. Co. v. Geragos & Geragos*, No. CV

11  20-3619, 2021 WL 1659844, at *5 (C.D. Cal. Apr. 27, 2021) ("The Court agrees

12  with the overwhelming majority of courts that have considered the issue and

13  similarly finds that direct physical loss of property does not include the temporary

14  loss of use due to… civil orders in response to the COVID-19 pandemic");

15  *Unmasked Management*, 514 F.Supp.3d at 1223 ("loss of use or functionality of the

16  covered property alone is not sufficient to trigger coverage"); *Jonathan Oheb MD,*

17  *Inc. v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-cv-8478-JWH, 2020 WL 7769880, at

18  *3 (C.D. Cal. Dec. 30, 2020) (insured suffered "a temporary limitation on the use of

19  property" and not "a *permanent* loss of property").

20      Furthermore, California courts have concluded that the mere presence of

21  COVID-19 does not qualify as physical damage to property "because the virus harms

22  human beings, not property." *Wellness Eatery La Jolla LLC v. Hanover Ins. Group,*

23  517 F.Supp.3d 1096,  1106 (S.D. Cal. 2021); *see also Palomar*, 2021 WL 4035005,

24  at *8 ("The presence of the SARS-CoV-2 virus on the covered property cannot

25  realistically be viewed as a risk to the physical integrity of the structure"); *Kevin*

26  *Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 513 F.Supp.3d 1163, 1171 (N.D.

27  Cal. 2021) ("Even if [plaintiff] had included allegations regarding the virus being

28  present on and damaging the property, they would not be plausible"); *BA LAX*, 2021

WL 144248, at 3 ("neither the presence of COVID-19 in society nor government restrictions can by themselves constitute direct physical loss or direct physical damage under California law").

Plaintiff alleges that "SARS-CoV-2 is statistically certain to be carried by a number of individuals who work and visit Always Smiling's sets and locations" and that "[t]he likely presence of SARS-CoV-2 around shooting locations rendered those areas potentially dangerous and potentially unsafe to enter." (Complaint, ¶¶ 54, 66.) These allegations regarding the presence of the virus at Plaintiff's "locations" should be rejected as conclusory and not plausible. *Kevin Barry Fine Art*, 513 F.Supp. at 1171 (plaintiff "has not, and cannot, allege risk of direct physical loss to property in the immediate area of [its] galleries"); *see also Barbizon School of San Francisco, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-cv-08578-TSH, 2021 WL 1222161, at *10 (N.D. Cal. Mar. 31, 2021) (general allegations that losses were caused by the "pervasive presence of the virus SARS-CoV-2 in the cities where the Insured Locations are located" are insufficient and "cannot serve as a substitute for a specific allegation that any property near the insured's premises was in fact damaged"); *Out West Rest. Group, Inc. v. Affiliated FM Ins. Co.*, No. 20-cv-06786-TSH, 2021 WL 1056627, at *6 (N.D. Cal. Mar. 19, 2021), *appeal filed* ("Plaintiffs have not plausibly alleged 'direct physical loss of or damage to' property, as required by the Policy"); *West Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F.Supp.3d 1233, 1240 (C.D. Cal. 2020) (rejecting plaintiff's "unsupported statements like 'the properties that are damaged are in the immediate area of the [hotels.'"); *Wellness Eatery,* 517 F.Supp.3d at 1106 (although closure orders stated that they were issued due to droplets containing the coronavirus being on surfaces and objects in, on, around, and in the immediate area of the insured's property, those allegations are simply "bare assertions" and "mere conclusory statements" that are not entitled to the presumption of truth).

Inasmuch as Plaintiff has not and cannot plausibly allege any "direct physical

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371  FACSIMILE: (510) 900-9381

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

1 loss or damage to property at a premises contiguous to [its] **location**," ingress/egress
2 coverage is not available. *BA LAX*, 2021 WL 144248, at *4 (where there was no
3 evidence of distinct, demonstrable, physical alteration, or permanent dispossession of
4 property at Plaintiffs' premises or at contiguous locations, Plaintiffs could not
5 establish entitlement to Ingress/Egress coverage). Indeed, even if Plaintiff could
6 somehow plausibly allege direct physical loss or damage to a property contiguous to
7 its "location," Plaintiff has not demonstrated that access to its own location was
8 "prevented." *Protégé Rest. Partners LLC v. Sentinel Ins. Co., Ltd.*, 517 F.Supp.3d
9 981, 990 (N.D. Cal. 2021) (rejecting insured's argument that access to its restaurant
10 was "prohibited" where plaintiff could enter the premises, even though customers
11 could not); *Barbizon School*, 2021 WL 1222161, at * 9 (civil authority orders to
12 reduce in-person workforce do not amount to a denial of access to property).

### 3.    Imminent Peril Coverage is Not Available

13 The Policy's Imminent Peril coverage provision states that Chubb will pay for:

15 • reasonable and necessary costs you incur to protect persons and
16   property at a **location** from imminent direct physical loss or damage
     caused by or resulting from a peril not otherwise excluded; and

18 • **production loss** you incur due to the actual or potential impairment of
19   an **insured production** due to actions you must take to protect
     persons or property at a **location** from imminent direct physical loss
20   or damage caused by or resulting from a peril not otherwise excluded
     not to exceed the applicable Limit of Insurance for Imminent Peril
21   shown under Production Loss in the Declarations….

22 (Complaint, ¶ 40 and Ex. A thereto.)

24 In order to trigger coverage under the Imminent Peril provision, there must be
25 imminent "direct physical loss or damage" to property that, in turn, requires the
26 insured to incur costs or suffer a production loss to protect persons and property from
27 that direct physical loss or damage.   As addressed above in connection with
28 Ingress/Egress coverage, the Complaint does not and cannot plausibly allege "direct

physical loss or damage" to property or any imminent "direct physical loss or damage" to property.

While there is a dearth of case law discussing coverage under an Imminent Peril provision such as the one set forth in the Chubb Policy, the coverage provision is in stark contrast to other "imminent peril" provisions that do not require any "imminent 'direct physical loss or damage'" to property.  For instance, in *Universal Cable Productions, LLC v. Atlantic Spec. Ins. Co.*, 929 F.3d 1143 (9th Cir. 2019), Atlantic Specialty issued a television production insurance policy to Universal Cable for the production of a television series being filmed in Jerusalem, Israel.  In the summer of 2014, Hamas fired rockets from Gaza into Israel, prompting the insured to move the production of the series out of Israel.  The policy covered losses that were "a direct result of an unexpected, sudden or accidental occurrence entirely beyond your control to include… [i]mminent peril, defined as certain, immediate and impending danger of such probability and severity to persons or property that it would be unreasonable or unconscionable to ignore." *Id.* at 1149.  Atlantic conceded that rockets being launched toward the areas where filming was to take place constituted a "covered imminent peril." *Id.* at 1151.

Here, though, the Imminent Peril provision does not speak in terms of mere impending danger to persons or property, but instead, requires costs incurred or production loss sustained because of steps to protect persons or property from imminent "direct physical loss or damage"—a requirement not contained in the policy at issue in *Universal Cable*.

### 4. Plaintiff is Not Entitled to Civil or Military Authority Coverage for COVID Safety Protocol Costs.

Plaintiff concedes that Chubb already paid its $1,000,000 "per occurrence" limit of liability under the Civil or Military Authority coverage provision for the initial shutdown of production in or around March 2020.  (Complaint, ¶ 67.) Plaintiff contends, however, that it is entitled to additional sums under the Civil or

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

Military Authority coverage provision for "Return to Work Costs"/COVID safety protocols.  The Civil or Military Authority coverage provision provides:

> We will pay for the actual **production loss** you incur due to the actual or potential impairment of an **insured production** directly caused by the action of a civil or military authority acting within the United States of America, (including its territories and possessions), Puerto Rico, Canada, Australia, New Zealand, or **Western Europe** and any Additional Territory shown in the Schedule above that:
>
> - revokes your permission to use; or
> - prohibits access to,
>
> property or facilities which are used or to be used in an **insured production,** not to exceed the applicable Limit of Insurance for Civil Or Military Authority shown under Production Loss in the Declarations. . . .

(*Id*. at ¶ 38.)

> The term "production loss" is defined in the Policy as:
>
> - additional **production costs** you necessarily incur to complete an **insured production** in essentially the same manner and within the specifications submitted to us prior to a loss; or
> - actual **production costs** you incurred prior to an abandonment of an **insured production** to which the Abandonment Provision applies.
>
> **Production Loss** does not mean costs:
>
> - of enhancements applicable to an **insured production** beyond the specifications submitted to us prior to a loss; or
> - incurred for that part of any **insured production** which has already been aired or exhibited.

(*Id*. at ¶ 34.)

Costs to restart production in a COVID landscape and to comply with COVID-safety protocols are not "directly caused by an action of civil or military authority revoking your permission to use or prohibiting access to property or facilities that are to be used in an insured production."  There simply are no plausible allegations that access to production facilities was prohibited or permission to use the facilities was revoked.  To the contrary, Plaintiff was able to access the production facilities, but simply incurred costs to comply with safety protocols.  Moreover, the definition of "production loss" expressly excludes costs of "enhancements applicable

12

to an insured production beyond the specifications submitted to us prior to a loss." Inasmuch as COVID-related "Return-to-Work Costs" are beyond the specifications submitted to Chubb prior to a loss, those costs are not covered under the Civil or Military Authority provision.

### 5. The "Due Diligence" Condition is Not a Coverage Grant.

The Conditions section of the Policy contains the following "Due Diligence" provision: "You shall use due diligence to avoid or diminish a loss or circumstance that may give rise to loss or damage…." (Complaint, ¶ 31.) The "Due Diligence" provision, which is not identified with a limit of liability in the Declarations, is not an affirmative coverage grant and does not operate as an enlargement of the perils underwritten against. Rather, this provision requires the insured to take affirmative steps to avoid or diminish a loss and, if the insured fails to do so and a loss occurs, coverage could be forfeited. In other words, compliance with the condition is a prerequisite to coverage. Accordingly, any steps taken by Plaintiff to prevent cast and crew members from contracting coronavirus, i.e. the so-called "Return-to-Work Costs," are not covered under this provision.

### 6. The "Protection of Property" Condition Does Not Provide Coverage for Costs to Prevent a Potential Future Loss.

The Conditions section also contains the following provision under a section entitled "Insured's Duties in the Event of Loss or Damage":

> You must see to it that the following are done in the event of loss or damage:
>
> *       *       *
>
> • Take every reasonable step to protect the property from further damage, and to avoid or minimize any loss or damage….We will pay such expenses to the extent such loss or damage is reduced.

(*Id.* at ¶ 32.) Here, any costs Plaintiff purportedly incurred for COVID-safety or Return-to-Work Costs were incurred to prevent a potential future loss, including Cast loss, rather than taking steps to avoid or minimize any loss or damage that already had occurred. This Policy condition does not provide loss-prevention coverage, such

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

as those expenses that Plaintiff may have incurred for "COVID safety."  Moreover, any Return-to-Work Costs incurred by Plaintiff would not serve to protect property from further damage for an existing loss.

### C.    The Second Cause Of Action For Breach Of Contract Should Be Dismissed Because Chubb Is Not Required To Renew The Policy Upon Expiration.

Plaintiff claims, in its Second Cause of Action, that Chubb "has and had a duty under the Policy, the law, and industry custom and practice to extend the period of the Policy beyond its stated expiration date if the completion of production [is] delayed beyond the stated expiration date" and that Chubb breached its duties under the Policy by "refusing to extend the Policy's term beyond the Policy's stated expiration date." (Complaint, ¶¶ 81, 82.)

The Policy was in effect from November 7, 2019 to November 7, 2020.  (*Id.* at ¶ 29.)  On August 19, 2020 (more than 60 days before the Policy expired), Chubb sent Plaintiff a notice stating that it would not renew the Policy and that coverage would cease on November 7, 2020.  (*Id.* at ¶ 68.)  This notice of  nonrenewal complied with the Policy provision entitled "When We Do Not Renew," which states:  "If we decide not to renew this policy, we will mail or deliver to the first Named Insured stated in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date…." (*Id.*, Ex. A, Common Policy Conditions, p. 2 of 2.)  There simply is no contractual obligation to renew the Policy or to do so on the same terms as the expiring Policy.

As Plaintiff recognizes in its Complaint, the Cast coverage ends when "the policy expires or is terminated" or upon "completion of the **insured production**," whichever occurs first.  (*Id.* at ¶ 42.)  Here, the policy may have expired prior to completion of the insured production but, under the clear terms of the Policy, Cast coverage terminates upon the earlier of the two conditions.  Similarly, the Property and Production Media Coverage form, which contains coverages for Civil or Military Authority, Imminent Peril, and Ingress/Egress, states that for "**production**

14

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

**media**, coverage… ends when the first of the following occurs:  1. The date on which a protection copy has been completed and stored…; 2. 30 days after completion of post production; 3. the expiration date shown in the Declarations; or 4. the policy is cancelled." (*Id.* at ¶ 43.)  Again, under the clear and unambiguous wording of the Policy, the Property and Production Media Coverage terminates upon the expiration date shown in the Declarations if that date precedes the completion of post production.

Plaintiff alleges in the Complaint that there was some purported custom and practice to extend the policy period beyond its stated expiration date if the completion of production is delayed beyond that stated expiration date.  (*Id.* at ¶¶ 73, 81.)  Whatever so-called "custom and practice" there may have been, there certainly was no custom and practice concerning the requirement to renew a policy during a pandemic.

In short, Chubb provided ample notice—in excess of the required 60 days—of its intent not to renew the policy beyond the November 7, 2020 policy expiration and its decision to non-renew the Policy does not constitute a breach of contract.  To the contrary, the Policy explicitly recognized Chubb's right to non-renew, provided that it provide 60-days notice to Plaintiff.  Accordingly, the Second Cause of Action for breach of contract for failing to renew the Policy should be dismissed with prejudice.

**D.     The Third Cause Of Action For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Should Be Dismissed.**

Plaintiff's Third Cause of Action alleges that Chub acted in bad faith by failing to provide coverage for the Plaintiff's losses.  (Complaint, ¶ 87.)  A claim for breach of the implied covenant of good faith and fair dealing "cannot be maintained unless policy benefits are due under a contract."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 35 (1995); *see also Minich v. Allstate Ins. Co.*, 193 Cal.App.4th 477, 493 (2011) ("claim for tortious breach of contract (bad faith) fails as a matter of law because [the insurer] did not breach the Policy"); *Brown v. Mid-Century Ins. Co.*,

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371  FACSIMILE: (510) 900-9381

MOUND COTTON WOLLAN & GREENGRASS LLP
2200 POWELL STREET  SUITE 1050
EMERYVILLE, CALIFORNIA 94608
TELEPHONE: (510) 900-9371   FACSIMILE: (510) 900-9381

215 Cal.App.4th 841, 858 (2013) ("Because the policy did not cover the [insureds'] claims, however, the [insureds] do  not have a claim for breach of the implied covenant of good faith and fair dealing.")

Here, because Chubb has complied with the terms of the insurance contract, Plaintiff's bad-faith claim should be dismissed. *See, e.g, 10E, LLC v. Travelers Indem. Co. of Conn.*, 483 F.Supp.3d 828, 837 (C.D.  Cal. 2020) (dismissing bad-faith claim where plaintiff claiming COVID-19 losses was not entitled to coverage under the policy); *O'Keefe v. Allstate Indem. Co.*, 953 F.Supp.2d 1111, 1116 (S.D. Cal. 2013) (plaintiffs "cannot sue for bad faith without proving that benefits were withheld under the policy 'as written,'" and they "cannot establish that coverage existed under the express terms of the contract").

## IV.   CONCLUSION

Inasmuch as there is no coverage for Plaintiff's alleged losses, other than what Chubb already has paid, Chubb did not breach the terms of the Policy and Count I of the Complaint should be dismissed.  Moreover, given that Chubb was under no obligation to renew the Policy and followed all procedures for non-renewal, Count II of the Complaint should be dismissed with prejudice.  Finally, because Chubb has complied with the terms of the Policy, Count III of the Complaint for bad-faith should be dismissed with prejudice.

Dated:  October 21, 2021              MOUND COTTON WOLLAN &
                                     GREENGRASS LLP


                                By:  /s/Kathleen DeLaney
                                     Jonathan Gross
                                     Kathleen DeLaney
                                     Attorneys for Defendant
                                     CHUBB NATIONAL INSURANCE
                                     COMPANY