UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge |
|---|---|
| Gabriela Garcia | None Present |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** (In Chambers) Order Re: Motion for Judgment on the Pleadings

Having reviewed and considered all the briefing filed with respect to defendant Chubb National Insurance Company's ("Chubb" or "defendant") Motion for Judgment on the Pleadings [] (Dkt. 16, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

### PLAINTIFF'S ALLEGATIONS[1]

Plaintiff Always Smiling Productions, LLC ("Always Smiling" or "plaintiff") produces The Morning Show television series, which premiered on Apple TV+ on November 1, 2019, and features several well-known actors. (See Dkt. 1, Complaint at ¶ 9). Defendant sold plaintiff an insurance policy "for the stated period of November 7, 2019, to November 7, 2020[,]" ("Policy"), which plaintiff "purchased . . . for the purpose of insuring against loss in the event that production of The Morning Show was disrupted or delayed for a covered cause of loss."[2] (Id. at ¶ 29); (see also Dkt. 1-1, Exh. A, Policy).

On March 12, 2020, plaintiff notified defendant "that it was shutting down production of the second season of The Morning Show after a 12-week prep and filming the first 13 days of principal photography." (Dkt. 1, Complaint at ¶ 56). In defendant's response to the notice of loss, it agreed to cover $1 million in losses under the Policy's Civil Authority Or Military provision. (See id. at ¶ 57).

On September 1, 2022, plaintiff sent defendant another letter stating that COVID-related events and plaintiff's "need to protect the cast and crew have caused [plaintiff] to incur substantial

---

[1] Because the parties are familiar with the facts, the court will repeat them below only as necessary.

[2] Capitalization, quotation and alteration marks, and emphasis in record citations may be altered without notation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

losses and expenses associated with the disruption of and delays in the production of The Morning Show." (Dkt. 1, Complaint at ¶ 59). Plaintiff stated that it "continue[d] to incur losses and expenses, including mitigation expenses to prevent and/or reduce the risk of declared persons contracting COVID-19." (Id.). Plaintiff "request[ed] coverage under all potentially applicable coverages [in the Policy], including Cast ($125,000,000 per occurrence), Civil Or Military Authority ($1,000,000 per occurrence), Imminent Peril ($1,000,000 per occurrence), Ingress and Egress ($1,000,000 per occurrence), the 'Due Diligence' and 'Insured's Duties In The Event Of Loss Or Damage' conditions, and the common law doctrine of mitigation." (Id.). Plaintiff's estimated losses at that time were approximately $34.9 million. (See id. at ¶ 60).

On September 30, 2022, defendant "sent a letter essentially denying coverage for most aspects of Always Smiling's loss." (Dkt.1, Complaint at ¶ 61). Production of The Morning Show "was shut down from March 15, 2020, until November 20, 2022." (Id. at ¶ 75).

Defendant also notified plaintiff "that it would not renew the Policy and that coverage would otherwise cease on November 7, 2020." (Dkt. 1, Complaint at ¶ 68). According to plaintiff, defendant "never offered to extend the Policy's period or [] offer[ed] a policy with comparable terms." (Id. at ¶ 71).

On July 23, 2021, plaintiff filed the instant action against defendant, asserting claims for: (1) breach of contract for refusal to provide the full promised insurance; (2) breach of contract for failure to extend the policy period; and (3) breach of the implied covenant of good faith and fair dealing. (See Dkt. 1, Complaint at ¶¶ 77-92).

## LEGAL STANDARD

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."[3] Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). The court must accept all facts in the complaint as true, and construe them in the light most favorable to the non-moving party. See Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "[T]he same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog[,]" because the motions are "functionally identical[.]" Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).

As with a Rule 12(b) motion to dismiss, a Rule 12(c) motion should be granted if the plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); see Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011).

---

[3] Here, defendant filed its Answer on June 16, 2021. (See Dkt. 12, Answer).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). In considering a Rule 12(c) motion, the court "generally is limited to the pleadings and may not consider extrinsic evidence[,]" Shame on You Prods., Inc. v. Banks, 120 F.Supp.3d 1123, 1143 (C.D. Cal. 2015), but may properly rely on exhibits attached to the complaint and documents subject to judicial notice. See id. at 1144.

**DISCUSSION**

I.    APPLICABLE LAW.

"Interpretation of an insurance policy is a question of law[.]" MacKinnon v. Truck Ins. Exchange, 31 Cal.4th 635, 647 (2003).[4] "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply." Powerine Oil Co., Inc. v. Super. Ct., 37 Cal.4th 377, 390 (2005) (internal quotation marks omitted). "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the mutual intention of the parties." E.M.M.I. Inc. v. Zurich Am. Ins. Co., 32 Cal.4th 465, 470 (2004) ("E.M.M.I.") (internal quotation marks omitted); see Cal. Civ. Code § 1636. The intent of the parties "is to be inferred, if possible, solely from the written provisions of the contract[,]" E.M.M.I., 32 Cal.4th at 470; see Cal. Civ. Code § 1639, but courts "also consider the circumstances under which the contract was made and the matter to which it relates." Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co., 163 Cal.App.4th 1387, 1392 (2008) ("Westrec Marina"); see Cal Civ. Code § 1647. Courts "consider the contract as a whole and construe the language in context, rather than interpret a provision in isolation." Westrec Marina, 163 Cal.App.4th at 1392; see Cal. Civ. Code § 1641. Words are interpreted in accordance with their "ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to them by usage[.]" E.M.M.I., 32 Cal.4th at 470 (internal quotation marks omitted); Cal. Civ. Code § 1644. "If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs." Westrec Marina, 163 Cal.App.4th at 1392; see Cal. Civ. Code § 1638. "In cases of uncertainty not removed by [other rules of contract interpretation], the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654.

II.    BREACH OF CONTRACT.

    A.    Imminent Peril and Ingress/Egress Coverage.

Plaintiff seeks coverage under two provisions in the Policy's "Production Loss Additional

---

[4] Subject matter jurisdiction in this case is based on diversity jurisdiction. (See Dkt. 1, Complaint at ¶ 6). Thus, the parties rely on California law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

Coverages" section, both of which require "direct physical loss or damage[.]" (See Dkt. 1-1, Exh. A, Policy at ECF 60). First, plaintiff relies on the Imminent Peril provision, which covers "reasonable and necessary costs [the insured] incur[s] to protect persons and property at a location from imminent direct physical loss or damage caused by or resulting from a peril not otherwise excluded[.]" (Id.); (see Dkt. 1, Complaint at ¶ 59); (Dkt. 19, Opposition to Defendant['s] Motion for Judgment on the Pleadings ("Opp.") at 10-11, 24-26). Second, plaintiff relies on the Ingress and Egress provision, which covers "the actual production loss [the insured] incur[s] due to the actual or potential impairment of an insured production when ingress to or egress from a location is prevented due to direct physical loss or damage to property at a premises contiguous to such location caused by or resulting from a peril not otherwise excluded[.]" (Dkt. 1-1, Exh. A, Policy at ECF 60); (see Dkt. 1, Complaint at ¶ 59); (Dkt. 19, Opp. at 10-11, 19-24).

Defendant contends "that neither stay-at-home orders nor a temporary loss of use of property constitute 'direct physical loss or damage to property.'" (Dkt. 16, Motion at 8). Specifically, defendant contends that the "presence of COVID-19 does not qualify as physical damage to property 'because the virus harms human beings, not property.'" (Id.) (quoting Wellness Eatery La Jolla LLC v. Hanover Ins. Group, 517 F.Supp.3d 1096, 1106 (S.D. Cal. 2021)). Plaintiff responds that "SARS-CoV-2 physically alters . . . the property surfaces to which it attaches[.]" (Dkt. 19, Opp. at 10). According to plaintiffs, "when SARS-CoV-2 attaches to surfaces, it converts those surfaces into 'fomites' – physical disease-transmitting mechanisms." (Id. at 10-11).

The phrase "physical loss of or damage" requires "an insured to allege physical alteration of its property[.]" Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 892 (9th Cir. 2021); see Creative Artists Agency, LLC v. Affiliated FM Ins. Co., 2022 WL 3097371, *5 (C.D. Cal. 2022) ("[T]he meaning of 'physical loss or damage' is . . . rather well established under California law."); (Dkt. 16, Motion at 7-8) (summarizing cases discussing the standard). Here, the court is unpersuaded that plaintiff has sufficiently alleged a "physical alteration of its property" to qualify for coverage under the subject provisions. See Mudpie, Inc., 15 F.4th at 892. "Many courts have rejected [plaintiff's] theory that the presence of the virus constitutes physical loss or damage to property."[5] United Talent Agency v. Vigilant Ins. Co., 77 Cal.App.5th 821, 835 (2022) (collecting cases); see, e.g., Inns-by-the-Sea v. California Mut. Ins. Co., 71 Cal.App.5th 688, 699, 705 (2021), review denied (March 9, 2022) (concluding that plaintiff had "not identified any direct

---

[5] The court is aware of the recent decision, issued after the briefing was completed in this case, by the California Court of Appeal in Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co., 296 Cal.Rptr.3d 777 (2022). In Marina Pacific, the appellate court reached a "conclusion [] at odds with almost all (but not all) decisions considering" these issues. Id. at 788. However, the court explained its decision in part by noting that "the pleading rules in federal court are significantly different from those we apply when evaluating a trial court order sustaining a demurrer[,]" which is particularly notable with respect to allegations that the virus causes physical damage to covered property. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

physical damage to property" despite alleging that the "physical presence [the virus] transforms property, specifically indoor air and surfaces, from a safe condition to a dangerous and potentially deadly condition unsafe and unfit for its intended purpose"); Creative Artists Agency, LLC, 2022 WL 3097371, at *6 (noting that "numerous district courts within [the Ninth Circuit] have rejected" the argument that the virus caused any physical alteration to covered property and collecting cases).  "While the impact of the virus on the world . . . can hardly be overstated, its impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days."  United Talent Agency, 77 Cal.App. 5th at 835 (quoting Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327, 335 (7th Cir. 2021)).

With respect to the Imminent Peril provision, plaintiff contends that this provision's "language is not conditioned on damage to property." (Dkt 19, Opp. at 24).  In addition to covering costs incurred "to protect persons and property at a location from imminent direct physical loss or damage[,]" the Imminent Peril provision covers "production loss [the insured] incur[s] due to the actual or potential impairment of an insured production due to actions [the insured] must take to protect persons or property at a location from imminent direct physical loss or damage[.]"  (Dkt. 1-1, Exh. A, Policy at ECF 60).  Plaintiff contends that this language "means that there is coverage for protecting 'persons' independently of whether Always Smiling also was protecting 'property.'" (Dkt. 19, Opp. at 25).

It is undisputed that the Imminent Peril provision covers costs and production losses incurred to protect persons, not just property.  (See Dkt. 1-1, Exh. A, Policy at ECF 60).  The question is how to interpret the phrase "direct physical loss or damage" in this provision.  Plaintiff contends that it covers "direct physical loss or damage" to humans.  (See Dkt. 19, Opp. at 24-25).  According to plaintiff, "efforts to reduce the risks that cast and crew might contract COVID-19" constitute efforts to "protect[] persons from physical loss or damage" because "COVID-19 clearly causes physical damage to the body."  (Id. at 25).  Defendant argues, however, that "the only reasonable interpretation of the Imminent Peril coverage provision is that it requires direct physical loss or damage to property that, in turn, requires the insured to incur costs or suffer a production loss to protect persons and property from that direct physical loss or damage."  (Dkt. 21, Reply at 6).

Given the ordinary meaning of the terms "physical loss or damage[,]" which are not typically associated with personal injuries, and the meaning other courts have given this phrase, see Mudpie, Inc., 15 F.4th at 892, the court is persuaded that defendant's interpretation is correct. The overall context of the Policy also supports this interpretation.  Plaintiff points to nowhere else in the Policy where "physical loss or damage" might refer to injuries sustained by a person as opposed to property.  (See, generally, Dkt. 19, Opp. at 10-11, 24-26).  Instead, the Policy frequently refers to "physical loss or damage" only with respect to various forms of property.  (See, e.g., Dkt 1-1, Policy at ECF 62) (referring to "physical loss or damage" to props, sets, wardrobe, production equipment, office contents, and library stock).  By contrast, the Policy uses different language when referring to covered losses associated with persons.  For example, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | **Always Smiling Productions, LLC v. Chubb National Insurance Company** | | |

Cast section of the Policy defines covered cause of loss as "death[,] injury[,] sickness[,] kidnap[,] or compulsion by physical force or threat of physical force[.]" (Dkt. 1-1, Exh. A, Policy at ECF 55); (see also id. at ECF 72) (referring to "bodily harm to any person" in the Kidnap/Ransom or Extortion provision).

In short, because plaintiff has failed to allege any physical loss or damage to property, no benefits were due under the Policy's Imminent Peril and Ingress and Egress provisions.

      B.     <u>Civil Authority Coverage</u>.

The Policy's Civil or Military Authority ("Civil Authority") provision, also contained within the Policy's Production Loss Coverages section, covers "the actual production loss [the insured] incur[s] due to the actual or potential impairment of an insured production directly caused by the action of a civil or military authority . . . that[] revokes [the insured's] permission to use[,] or prohibits access to, property or facilities which are used or to be used in an insured production[.]" (Dkt. 1-1, Exh. A, Policy at ECF 59); (Dkt. 1, Complaint at ¶¶ 30, 37-38). Plaintiff seeks coverage under this provision for "costs to restart production and for COVID-19 related safety protocols[.]" (Dkt. 1, Complaint at ¶ 62); (see id. at ¶¶ 30, 37-38, 51-53); (Dkt. 19, Opp. at 18-19).

Defendant contends that "[c]osts to restart production in a COVID landscape and to comply with COVID-safety protocols are not directly caused by an action of civil or military authority revoking [plaintiff's] permission to use or prohibiting access to property or facilities that are to be used in an insured production." (Dkt. 16, Motion at 12) (internal quotation marks omitted). According to defendant, "[t]here simply are no plausible allegations that access to production facilities was prohibited or permission to use the facilities was revoked" by a civil authority order. (Id.). "To the contrary," defendant argues, "Plaintiff was able to access the production facilities, but simply incurred costs to comply with safety protocols." (Id.).

Plaintiff's opposition fails to respond to defendant's argument that the Civil Authority provision does not cover restart costs or COVID-19 safety protocols because no civil authority action revoked plaintiff's permission to use, or prohibited access to, its property or facilities. (See, generally, Dkt. 19, Opp. at 18-19). The closest plaintiff comes to addressing this argument is by asserting that "the definition of 'Production Loss' includes costs to comply with health and safety protocols[,]" which addresses a separate and additional requirement under the Civil Authority provision. (Id. at 18); (see Dkt. 1-1, Exh. A, Policy at ECF 59). In any event, plaintiff's contentions are unpersuasive.

To show entitlement to coverage under the Civil Authority provision, an insured must allege that a civil authority action had "revoke[d] [its] permission to use[,] or prohibit[ed] access to, property or facilities . . . used . . . in an insured production[.]" (See Dkt. 1-1, Exh. A, Policy at ECF 59). Plaintiff fails to do so here despite being aware of defendant's position. (See, generally, Dkt. 1, Complaint); (see id. at ¶ 62) (acknowledging that defendant "took the position that costs to restart production and for COVID-19 related safety protocols 'are not directly caused by an action of civil or military authority revoking [plaintiff's] permission to use or prohibiting access to property

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

or facilities used in an insured production'"). Moreover, plaintiff could not plausibly make such an allegation under these circumstances. See, e.g., Disc. Elecs., Inc. v. Wesco Ins. Co., 2022 WL 123114, *4 (C.D. Cal. 2022) (concluding that "Plaintiffs fail to assert that any of the public health orders on which the Civil Authority claim is predicated prohibited Plaintiffs' access to their properties"); Pappy's Barber Shops, Inc. v. Farmers Group, Inc., 487 F.Supp.3d 937, 944-45 (S.D. Cal. 2020) (noting that "the complaint does not allege that any COVID-19 Civil Authority Orders prohibited Plaintiffs from access to their business premises" for purposes of civil authority coverage).

      C.    Cast Coverage.

Plaintiff also seeks coverage under the Policy's Cast section, in which defendant agreed to "pay for the actual production loss [the insured] incur[s] due to the inability of an essential element or other declared person to commence, continue or complete their duties or performances in an insured production as a result of a covered cause of loss of such essential element or other declared person[]." (Dkt. 1-1, Exh. A, Policy at ECF 50); (see Dkt. 1, Complaint at ¶ 33). A Covered Cause of Loss is defined as "death[,] injury[,] sickness[,] kidnap[,] or compulsion by physical force or threat of physical force[.]" (See Dkt. 1-1, Exh. A, Policy at ECF 55); (see Dkt. 1, Complaint at ¶ 36).

Defendant contends that "[t]he Complaint is devoid of any allegations that any 'declared person' in The Morning Show sustained a covered cause of loss, i.e., death, injury, sickness, kidnap, or compulsion by physical force or threat of physical force, let alone that there was any 'actual production' loss because of a covered cause of loss." (Dkt. 16, Motion at 6). Absent a covered cause of loss, defendant argues, the "Cast coverage is not triggered." (Id.).

Plaintiff does not dispute that it failed to allege a covered cause of loss under the Cast section. (See, generally, Dkt. 19, Opp. at 13-18). However, plaintiff points to "two conditions requiring Always Smiling to seek to prevent or minimize such a potential loss[,]" (id. at 13), which imposed an obligation on defendant "to pay for Always Smiling's reasonable expenses to avoid future loss, as long as the future loss Always Smiling avoided could have potentially been covered by the Policy." (Id. at 15). The court will address the two conditions in turn.

      1.    **Insured's Duties in the Event of Loss or Damage Condition**.

First, plaintiff seeks Cast coverage under the condition entitled, "Insured's Duties in the Event of Loss or Damage" ("Loss or Damage Condition"), (see Dkt. 1, Complaint at ¶ 59); (Dkt. 19, Opp. at 10, 13-14), which provides that, "in the event of loss or damage[,]" the insured must "[t]ake every reasonable step to protect the property from further damage, and to avoid or minimize any loss or damage[.]" (Dkt. 1-1, Exh. A, Policy at ECF 105). The condition further directs the insured to "[k]eep a record of [] expenses necessary to protect such property or to avoid or minimize any loss or damage for consideration in the settlement of the claim[,]" and pledges that defendant will "pay such expenses to the extent such loss or damage is reduced."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | **Always Smiling Productions, LLC v. Chubb National Insurance Company** | | |

(Id.).

Defendant contends that "any costs Plaintiff purportedly incurred for COVID-safety or Return-to-Work Costs were incurred to prevent a potential future loss, including Cast loss, rather than taking steps to avoid or minimize any loss or damage that already had occurred." (Dkt. 16, Motion at 13). According to defendant, the Loss or Damage Condition "does not provide loss-prevention coverage, such as those expenses that Plaintiff may have incurred for 'COVID safety[,]'" and that "any Return-to-Work Costs incurred by Plaintiff would not serve to protect property from further damage for an existing loss." (Id. at 13-14).

Plaintiff acknowledges that the Loss or Damage Condition directs the insured "to protect the property from further damage[,]" (Dkt. 19, Opp. at 10), but contends that the condition "goes far beyond that by stating that Always Smiling shall take steps to 'avoid or minimize any loss or damage,' not just respond to past property damage." (Id.) (quoting Dkt. 1-1, Exh. A, Policy at ECF 105). Nonetheless, plaintiff overlooks the threshold requirement that the Loss or Damage Condition applies only "in the event of loss or damage[.]" (Dkt. 1-1, Exh. A, Policy at ECF 105). And because plaintiff has not alleged any covered loss or damage, (see, generally, Dkt. 1, Complaint); (Dkt. 19, Opp. at 9-10, 13-18), it cannot meet that threshold requirement.

Plaintiff also relies on California Insurance Code § 531, which provides than an insurer is liable:

> (a) Where the thing insured is rescued from a peril insured against, and which would otherwise have caused a loss, if, in the course of such rescue, the thing is exposed to a peril not insured against, and which permanently deprives the insured of its possession, in whole or in part.
> (b) If a loss is caused by efforts to rescue the thing insured from a peril insured against.

Cal. Ins. Code § 531. According to plaintiff, "California Insurance Code [§] 531 codifies 'the duty implied in law on the part of the insured to labor for the recovery and restitution of damaged or detained property[.]'" (Dkt. 19, Opp. at 17) (quoting Young's Mkt. Co. v. Am. Home Assur. Co., 4 Cal.3d 309, 313 (1971)). However, as explained above, see supra at § II.A., plaintiff has not alleged any possible "damaged or detained property" resulting from COVID-19, (see, generally, Dkt. 19, Opp. at 13-18), and thus California Insurance Code § 531 does not apply.[6]

Finally, plaintiff asserts that defendant is "obligated to pay for [its] reasonable expenses to avoid future loss, as long as the future loss [it] avoided could have potentially been covered by

---

[6] For the same reason, plaintiff's reliance on State of California v. Allstate Ins. Co., 45 Cal.4th 1008, 1026 (2009), (see Dkt. 19, Opp. at 16), is unavailing. There, the court discussed a general policy that it said had been codified at California Insurance Code § 531.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

the Policy."[7] (Dkt. 19, Opp. at 15). For support, plaintiff relies on several cases that, like Young's Market Co., involved insurance policies that contained "sue and labor" clauses that made the insurer expressly liable for costs incurred to protect covered property. (See Dkt. 19, Opp. at 15, 17); see, e.g., Young's Mkt. Co., 4 Cal.3d at 311 (policy contained sue and labor clause providing that "[i]n case of actual or imminent loss or damage it shall be lawful and necessary for the Insured . . . to sue, labor and travel for, in and about the defense, safeguard and recovery of the property insured hereunder, . . . to the charges whereof, the Company will contribute according to its proportion to the sum hereby insured"); S. Cal. Edison Co. v. Harbor Ins. Co., 83 Cal.App.3d 747, 751 (1978) (explaining that "[u]nder the sue and labor clauses, the insurers were made expressly liable for expenses so incurred" to safeguard the insured property); Zurich Ins. Co. v. Pateman, 692 F.Supp. 371, 375 (D.N.J. 1987) ("Under this provision the underwriter is liable for all costs expended by the insured in preventing or ameliorating a loss which the underwriter would be required to pay."); Ins. Co. of N. Am. v. U.S. Gypsum Co., 870 F.2d 148, 154 (4th Cir. 1989) (concluding that "[t]he jury was properly instructed that USG could recover 'sue and labor' damages for expenditures which were reasonably incurred in attempting to reduce the losses which were suffered whether or not those attempts were successful").

Here, by contrast, the Loss or Damage Condition applies only "in the event of loss or damage[,]" (see Dkt. 1-1, Exh. A, Policy at ECF 105), but plaintiff alleges no loss or damage triggering coverage under this condition. (See, generally, Dkt. 1, Complaint); (see also Dkt. 19, Opp. at 10-11, 13-18); (Dkt. 21, Reply at 3); see, e.g., Grebow, 241 Cal.App.4th at 578 (denying coverage where"[t]he policy [did] not provide for reimbursement to prevent imminent insurable occurrence" and noting that the case did not involve "mitigation after insurable damage occurs").

      2.    **Due Diligence Condition**.

Plaintiff also contends that it is entitled to coverage under the Policy's "Due Diligence" Condition, which requires that the insured "use due diligence to avoid or diminish a loss or circumstance that may give rise to loss or damage[,]" and provides that "[a]ny loss or damage due to a failure to follow instructions for the use of material or equipment will not be covered." (Dkt. 1-1, Exh. A, Policy at ECF 104); (See Dkt. 1, Complaint at ¶¶ 31, 59). According to plaintiff, it incurred covered losses "when it was forced to shut down production beginning in March 2020 due to the spread of SARS-CoV-2, the dangerous nature of COVID-19, the government orders closing non-essential businesses and ordering people to stay at home, the need to protect the health and safety of its cast and crew, and otherwise mitigate its loss[,]" and that when it "resumed production, it had to spend unexpected additional amounts to ensure that it could complete

---

    [7] To the extent plaintiff contends that defendant was liable "for the amounts that [plaintiff] incurs in seeking to minimize or prevent loss" despite the absence of an express provision, (Dkt. 19, Opp. at 9), the court is unpersuaded because "[t]here is no implied obligation to reimburse an insured for costs to prevent an imminent insurance damage." Grebow v. Mercury Ins. Co., 241 Cal.App.4th 564, 578 (2015).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

production in a safe manner and avoid a much larger . . . loss that would be covered under the Policy." (Dkt. 19, Opp. at 9-10). Plaintiff's contentions are unpersuasive.

As defendant notes, the Due Diligence Condition is not an independent grant of coverage, but rather "a prerequisite to coverage" because "coverage could be forfeited" under the condition if an insured fails to use due diligence in avoiding or diminishing a loss. (Dkt. 16, Motion at 13); (see Dkt. 1-1, Exh. A, Policy at ECF 104). Indeed, unlike the Loss or Damage Condition, which promises to "pay [] expenses to the extent such [covered] loss or damage is reduced[,]" (Dkt. 1-1, Exh. A, Policy at ECF 105), the Due Diligence Condition does not promise to cover any mitigation costs. (See, generally, id.).

In sum, the court concludes that under the Policy's plain terms, defendant was justified in denying benefits.

III. BREACH OF CONTRACT FOR FAILURE TO EXTEND POLICY PERIOD.

Plaintiff asserts a second claim for breach of contract for failure to extend the policy period. (See Dkt. 1, Complaint at ¶¶ 80-83). According to plaintiff, "when Chubb sold Always Smiling its Policy, Chubb knew, and should have known, that Always Smiling was relying on the Chubb and the industry's custom and practice and that the policy period would be extended beyond its stated date if needed to complete the production." (Id. at ¶ 73). Plaintiff claims that "it was standard in the industry to extend policy periods when productions could not be completed as a result of a covered loss[,]" and that defendant "acted improperly and breached the insurance agreement by not extending the Policy to encompass all production on Season 2 of The Morning Show." (Dkt. 19, Opp. at 26).

Plaintiff's contentions that defendant "did not act in accord with custom and practice[,]" (Dkt. 19, Opp. at 26), and that "the Policy language is ambiguous[,]" (id. at 29), are unpersuasive. Here, the policy period ran from November 7, 2019, to November 7, 2020. (See Dkt. 1, Complaint at ¶ 29); (Dkt. 1-1, Exh. A, Policy at ECF 43). Plaintiff acknowledges that defendant timely notified plaintiff that it was not going to renew the Policy. (See Dkt. 1, Complaint at ¶ 68), (Dkt. 16, Motion at 14). By doing so, defendant complied with the Policy's provision, "When We Do Not Renew[,]" which states that if defendant "decide[s] not to renew this policy, [defendant] will mail or deliver to the first Named Insured stated in the Declarations written notice of the nonrenewal not less than 60 days before the expiration date." (Dkt. 1-1, Exh. A, Policy at ECF 137). In other words, given the clearly-stated policy period and the procedure for defendant to provide notice of non-renewal, (see, e.g., Dkt. 1-1, Exh. A, Policy at ECF 43, 137), the court cannot conclude that defendant had any obligation under the contract to extend the policy period or renew the policy.

IV. BREACH OF GOOD FAITH AND FAIR DEALING.

Because plaintiff's bad faith claim is premised on the same allegations supporting its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5990 FMO (KSx) | Date | September 6, 2022 |
|---|---|---|---|
| Title | Always Smiling Productions, LLC v. Chubb National Insurance Company | | |

breach of contract claims, (see, generally, Dkt. 1, Complaint at ¶¶ 84-92), plaintiff's third claim fails for the reasons discussed above. See Waller v. Truck Ins. Exch., Inc., 11 Cal.4th 1, 36 (1995) (explaining that "a bad faith claim cannot be maintained unless policy benefits are due" and that "if there is no potential for coverage . . . there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship between the insured and the insurer") (internal quotation marks omitted); Minich v. Allstate Ins. Co., 193 Cal.App.4th 477, 493 (2011) (concluding that a "claim for tortious breach of contract (bad faith) fails as a matter of law because [the insurer] did not breach the Policy") (formatting omitted).

V.    LEAVE TO AMEND.

"Courts have discretion to grant Rule 12(c) motions with leave to amend," but need not do so "where any amendment would be futile."  Crosby v. Wells Fargo Bank, N.A., 42 F.Supp.3d 1343, 1346 (C.D. Cal. 2014); see Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").  Here, leave to amend would be futile because the plain terms of the policy do not permit coverage for the COVID-related costs that plaintiff incurred.

**CONCLUSION**

**This Order is not intended for publication.  Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

Based on the foregoing, IT IS ORDERED THAT defendant's Motion for Judgment on the Pleadings [] **(Document No. 16)** is **granted**,   The above-referenced action is hereby dismissed with prejudice.  Judgment shall be entered accordingly.

|  | 00 : 00 |
|---|---|
| Initials of Preparer | DBE |